UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ANTHONY MICHAEL BUTLER,

     Plaintiff,

v.

ROBERT PICKELL, CHRISTOPHER
SWANSON, MICHAEL TOCARCHICK,
JASON GOULD, and COUNTY OF
GENESEE,

     Defendants.

Case No. 1:21-cv-10817
District Judge Thomas L. Ludington
Magistrate Judge Kimberly G. Altman

_____/

## REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION TO DISMISS (ECF No. 24)

### I.     Introduction

This is a prisoner civil rights case.  On March 31, 2021, Plaintiff Anthony

Michael Butler (Butler) filed a *pro se* civil complaint under 42 U.S.C. § 1983,

naming as defendants the current and former sheriffs of Genesee County, jail

administrators, the Genesee County Sheriff's Department, and the County of

Genesee.[1]  (ECF No. 1).  In broad terms, Butler alleges that defendants installed an

_____

[1] Dylan John Earick (Earick) was also a named plaintiff but was dismissed without
prejudice.  Likewise, the Genesee County Sheriff's Department was dismissed as a
defendant.  *See* ECF No. 8.

1

audio and video surveillance system in the jail which recorded his confidential attorney-client meetings which violated his constitutional rights.  Under 28 U.S.C. § 636(b)(1), all pretrial matters have been referred to the undersigned.  (ECF No. 15).

Before the Court is a motion to dismiss filed by Robert Pickell, Christopher Swanson, Michael Tocarchick, Jason Gould, and County of Genesee (collectively "Defendants").  (ECF No. 24).  For the reasons that follow, IT IS RECOMMENDED that the motion be GRANTED IN PART AND DENIED IN PART, as follows:

> The motion should be DENIED as to Butler's Sixth Amendment and Fourth Amendment claims brought under 42 U.S.C. § 1983;
>
> The motion should be GRANTED as to Butler's claims for injunctive relief;
>
> The motion should be GRANTED as to Butler's claims under Fourteenth and Fifth Amendment due process;
>
> The motion should be GRANTED as to Butler's claim under Fourteenth Amendment equal protection; and
>
> The motion should be GRANTED as to Butler's claims under the Michigan constitution and his state law statutory claim under M.C.L. § 750.539.

II.    Procedural and Factual Background

In its order of partial dismissal, the Court summarized the facts in the

complaint as follows:

> Plaintiffs allege Defendants are responsible for the installation of a new
> surveillance system which began recording in October 2017.  ECF No.
> 1 at PageID.3.  Cameras and microphones "were installed in areas
> where Attorney-client consultations regularly occur."  *Id.*  Plaintiffs
> assert that attorney-client meetings were recorded until at least
> February 2021, and that the recordings provided the prosecution access
> to "privileged consultations . . . [including] facts of the case and
> sensitive information such as trial strategy."  *Id.*
>
> Plaintiffs further allege that because the jail is a public facility, the
> recordings are subject to release under the Freedom of Information Act.
> *Id.*  In support, Plaintiffs contend that a private citizen was able to
> obtain such records.  *Id.* at PageID.7.  They allege the existence of
> evidence associated with two attorney-client meetings in October 2020.
> *Id.* at PageID.5.
>
> Plaintiffs seek $12,500,000 for each violation of their constitutional
> rights, totaling $100 million.  ECF No. 1 at PageID.6.  They also request
> injunctive relief against the Genesee County Jail, to "prevent[] further
> intrusion upon Attorney-client privileged communications."   *Id.*
> Finally, Plaintiffs seek the dismissal of any charges against them for
> which they would have sought legal counsel between May 2019 and
> February 2021.

(*Id.*, PageID.41).

Butler asserts that as a result of the alleged intrusion into the attorney-client

privilege, he "suffered legal injuries" under the Fourth, Fifth, Sixth, and Fourteenth

Amendments, and the analogous provisions of the Michigan constitution.  (*Id.*,

PageID.6).

On October 12, 2021, Butler filed a motion to amend his complaint to name four additional defendants:  Brian MacMillan, Senior Assistant Prosecuting Attorney; Deadrea L. Smith, paralegal with the Genesee County Prosecutor's Office; David S. Leyton, the Genesee County Prosecutor; and Todd Lanning, Lieutenant with the Genesee County Sheriff's Office.  (ECF No. 11, PageID.55-56).  He also sought to add Michigan law claims against these defendants, specifically violations of M.C.L. § 15.243(1)(g), M.C.L. § 752.11, and Article I, §§ 2 and 20 of the Michigan constitution.  (*Id*., PageID.56-57).

On December 15, 2021, the Court granted Butler's motion to amend, ordering that he file an amended complaint within 21 days of the order, and that "[i]n the amended complaint, Butler must include all of the allegations and claims as to each of the original and new defendants."  (*Id*., PageID.77-78).  To date, Butler has not filed an amended complaint, and the new defendants, who are not part of this motion, have not been served.  Thus, the original complaint, ECF No. 1, is the operative complaint.

### III.    Legal Standard

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "construe the complaint in the light most favorable to plaintiff and accept all allegations as true."  *Keys v. Humana, Inc*., 684 F.3d 605, 608 (6th Cir. 2012).  "To survive a motion to dismiss, a complaint must contain

sufficient factual matter, accepted as true, to state a claim to relief that is plausible

on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks

omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)

(concluding that a plausible claim need not contain "detailed factual allegations,"

but it must contain more than "labels and conclusions" or "a formulaic recitation of

the elements of a cause of action . . ."). Facial plausibility is established "when the

plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S.

at 678 (citation omitted). "The plausibility of an inference depends on a host of

considerations, including common sense and the strength of competing

explanations for the defendant's conduct." *16630 Southfield Ltd., P'Ship v.

Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

Furthermore, the Court holds *pro se* complaints to "less stringent standards

than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520

(1972). However, even in pleadings drafted by *pro se* parties, " 'courts should not

have to guess at the nature of the claim asserted.' " *Frengler v. Gen. Motors*, 482

F. App'x 975, 976-77 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594

(6th Cir. 1989)). Moreover, "courts may not rewrite a complaint to include claims

that were never presented ... nor may courts construct the Plaintiff's legal

arguments for him.... [N]either may the Court 'conjure up unpled allegations[.]' "

*Rogers v. Detroit Police Dept.*, 595 F.Supp.2d 757, 766 (E.D. Mich. 2009)

(Ludington, J., adopting report and recommendation of Binder, M.J.).

IV.   Analysis

A.   The Sixth Amendment

Butler alleges that from May of 2019 until at least February of 2021, the

video surveillance system in the Genesee County Jail recorded numerous

privileged consultations he had with his attorney.  (ECF No. 1, PageID.5).  He

alleges that there were both audio and visual recordings.  (*Id*., PageID.3).  Butler

claims a violation of his Sixth Amendment right to counsel.  (*Id*., PageID.6).

Defendants argue that Butler's Sixth Amendment claim requires a showing

of prejudice and his claim fails because he "has not alleged how he was prejudiced

as a result of the alleged recording of his meetings with his lawyers."  (ECF No.

24, PageID.117).  This argument proves too much.

Defendants are correct that where there is a Sixth Amendment right to

counsel challenge to a *criminal* conviction, either on direct or collateral review, the

convicted person must show prejudice.  *See United States v. Moses*, 337 F. App'x

443, 448 (6th Cir. 2009) ("A Sixth Amendment violation based upon intrusion on

the attorney-client relationship only occurs if prejudice is shown.") (citing

*Weatherford v. Bursey,* 429 U.S. 545, 558 (1977)).  *Moses* was a direct criminal

appeal and *Weatherford* was a habeas case.

However, the analysis is different where, as here, the Sixth Amendment claim is brought in a civil case under § 1983.  In such case, a showing of specific prejudice is not required.  In the civil context, infringement on the right to counsel by surveillance of attorney-client conferences has a chilling effect on full and free communication.  In *Muhammad v. Pitcher*, 35 F.3d 1081, 1084 (6th Cir. 1994), the Sixth Circuit noted that " '[i]t is well-settled that a chilling effect on one's constitutional rights constitutes a present injury in fact.' "  (Quoting *G & V Lounge v. Michigan Liquor Control Comm'n,* 23 F.3d 1071, 1076 (6th Cir. 1994)); *see also Walen v. Sprint*, No. 06-14201, 2007 WL 2870176, at *2 (E.D. Mich. Sept. 27, 2007) ("Moreover, prejudice can be established by the violation itself: 'It is well-settled that a chilling effect on one's constitutional rights constitutes a present injury in fact' ") (quoting *Muhammad*, 35 F.3d at 1084).

This Court's previous opinion permitting Butler's Sixth Amendment claim to survive initial screening[2] under the Prison Litigation Reform Act (PLRA) noted that "[t]he Second Circuit vacated a district court order where the lower court 'failed to consider any chilling effect' that jail surveillance had on the plaintiffs'

---

[2] This Court's previous opinion noted that "[t]he dismissal standard under the PLRA is equivalent to that of Federal Rule of Civil Procedure 12(b)(6), as clarified by *Ashcroft v. Iqbal....*"  (Citing *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010)).  (ECF No. 8, PageID.42).  Therefore, to the extent Defendants' current challenge to Butler's Sixth and Fourth Amendment claims seek to reargue issues previously determined, they are barred under the "law of the case" doctrine.

right to counsel." (Quoting *Grubbs v. O'Neill*, 774 F. App'x 20, 23 (2nd Cir. 2018) (citing *Wolff v. McDonnell*, 418 U.S. 539, 577 (1974)). (ECF No. 8, PageID.46). More specifically, *Grubbs* noted the importance of considering "the chilling effect that the cameras' presence in the attorney–client booths could have on pre-arraignment detainees' willingness to communicate candidly with their attorneys." *Id.*[3]

A First Amendment claim of denial of access to the courts also requires a showing of prejudice where the inmate must show actual injury or that the defendants' conduct "hindered his efforts to pursue a legal claim." *See*, *e.g.*, *Lewis v. Casey*, 518 U.S. 343, 351–54 (1996). However, in

---

[3] Butler and two other plaintiffs—Earick and Christopher Lumpkin—filed a separate complaint on March 31, 2021, the same day the present complaint was filed. *See Earick, et al. v. MacMillian, et al.*, Case No. 21-10819. That complaint alleged a violation of the Sixth Amendment right to the effective assistance of counsel based on the same video/audio surveillance system alleged in the present case. Judge Ludington *sua sponte* dismissed this other case on initial screening under the PLRA, finding that a showing of prejudice was required for the alleged Sixth Amendment violation. *See* Case No. 21-10819, ECF No. 7, PageID.52-53). However, that case is distinguishable. In *Earick*, the defendants included members of the prosecutor's office, and it was alleged that privileged information was improperly disclosed to them through a Freedom of Information Act request. (*Id.*, PageID.50) (ECF No. 1, PageID.4-5). Unlike the present case, the claim in *Earick* was not a stand-alone Sixth Amendment violation based on the recording itself, but the dissemination of information to the prosecutor's office and the resultant denial of the effective assistance of counsel at trial. As discussed above, a trial-related claim of that nature does require a showing of prejudice and does not implicate the "chilling effect" analysis which allowed Butler's Sixth Amendment claim to go forward.

*Benjamin v. Fraser*, 264 F.3d 175 (2nd Cir. 2001), the Second Circuit explained why a First Amendment claim (including where an inmate seeks to overturn a conviction or sentence) and a § 1983 Sixth Amendment right to counsel claim are different, and why the Sixth Amendment claim does not require a showing of actual prejudice:

> The Department is correct that the right to counsel and the right of access to the courts are interrelated, since the provision of counsel can be a means of accessing the courts.  However, the two rights are not the same.  The access claims at issue in *Lewis* concerned the ability of convicted prisoners "to attack their sentences, directly or collaterally, and ... to challenge the conditions of their confinement."  518 U.S. at 355, 116 S.Ct. 2174.  By contrast, here we are concerned with the Sixth Amendment right of a pretrial detainee, in a case brought against him by the state, to utilize counsel in his defense.  *It is not clear to us what "actual injury" would even mean as applied to a pretrial detainee's right to counsel.  Lewis* describes "actual injury" as a showing that a "non-frivolous legal claim had been frustrated or was being impeded" due to the action of prison officials.  *Lewis*, 518 U.S. at 353, 116 S.Ct. 2174.  *The reason pretrial detainees need access to the courts and counsel is not to present claims to the courts, but to defend against the charges brought against them*.

*Id*. at 186–87. (Emphasis added).  Rejecting the principle that an inmate must show specific prejudice in a § 1983 Sixth Amendment case, the Second Circuit instead applied the balancing-of-interests test of *Procunier v. Martinez*, 416 U.S. 396 (1974), overruled in part on other grounds by *Thornburgh v. Abbott*, 490 U.S. 401 (1989) and *Bell v. Wolfish*, 441 U.S. 520 (1979).  *Benjamin*, 264 F.3d at 184.  *Bell v. Wolfish* described that test as follows:

9

> "[W]hen an institutional restriction infringes a specific constitutional guarantee, such as the First Amendment [or Sixth Amendment], the practice must be evaluated in the light of the central objective of prison administration, safeguarding institutional security."

441 U.S. at 547; *see also Turner v. Safley,* 482 U.S. 78, 89 (1987) ("when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests"); *Grubbs*, 744 F. App'x at 22 ("To evaluate whether an institutional restriction on the Sixth Amendment rights of individuals in custody is valid, we employ a balancing test to determine if the restriction 'unreasonably burden[s]' an individual in custody's "opportunity to consult with his attorney and to prepare his defense") (citing *Benjamin*, 264 F.3d at 187); *Muhammad*, 35 F.3d at 1083 (quoting and adopting the *Turner v. Safely* standard for assessing curtailment of constitutional rights in the prison setting.).

Taking Butler's allegations as true, as required under Rule 12(b)(6), he has stated a plausible Sixth Amendment violation based on the alleged monitoring and recording of privileged conversations with his attorney. Whether or not the precise nature of the recording/monitoring was permissible under the *Turner v. Safely* analysis may be examined at the summary judgment stage, but it is premature to make that determination in a Rule 12(b)(6) motion. Thus, Butler's Sixth Amendment claim should survive dismissal at this stage.

B.       Injunctive Relief[4]

Butler has asked for both monetary and injunctive relief.  (ECF No. 1,

PageID.6).  If he survives summary judgment and makes a sufficient showing at

trial, he could request punitive damages or, at a minimum, nominal damages.  *See*

*Slappy v. City of Detroit*, No. 19-10171, 2021 WL 2986284, at *6 (E.D. Mich. July

15, 2021) ("Punitive damages are available in a proper § 1983 action.") (citing

*Smith v. Wade*, 461 U.S. 30, 35 (1983)).

Butler's request for injunctive relief, however, is another matter.  He is not

entitled to injunctive relief for two reasons.  First, he asks for dismissal of any

charges against him.  Unless his criminal convictions have been overturned or

terminated in his favor, he may not raise the impact of the alleged Sixth

Amendment violation on the convictions.  *See Heck v. Humphrey*, 512 U.S. 477

(1994).[5]  "Civil tort actions are not appropriate vehicles for challenging the validity

of outstanding criminal judgments."  *Id*. at 486.

---

[4] Butler also filed a motion for a preliminary injunction, requesting relief in the form of an directing the parties to this suit to maintain a 1,000-foot distance from him; that the parties refrain from making any public comment about this case; that the defendants not "seek action in any matters until resolution of this matter;" and that the Genesee County Sheriff's Office release him from custody.  (ECF No. 9, PageID.49).  The undersigned issued a report and recommendation, recommending that Butler's motion be denied.  (ECF No. 31).

[5] As discussed above, were Butler to raise the Sixth Amendment issue in a direct criminal appeal or a habeas petition, he would have to show actual prejudice, which is not a requirement in the present § 1983 case.  Therefore, a verdict in his

Second, Butler also asks for injunctive relief against Genesee County in the form of "preventing further intrusion upon attorney-client privileged communications." (ECF No. 1, PageID.6).  However, Butler is no longer housed at the Genesee County Jail.  A prisoner's claims for injunctive relief based on incidents occurring in one institution become moot once the prisoner is transferred to another institution.  *Kensu v. Haight*, 87 F.3d 172, 175 (6th Cir. 1996); *see also Henderson v. Martin*, 73 Fed. Appx. 115, 117 (6th Cir. 2003) (prisoner's claim for injunctive relief against prison officials became moot when he was transferred from the prison of which he complained to a different facility).  Thus, Butler's claim for injunctive relief should be dismissed.

### C.    The Fourth Amendment

Butler alleges that the recording and dissemination of his meeting with his attorney constituted and unlawful search and seizure, in violation of the Fourth Amendment.  Defendants argue that the Fourth Amendment claim should be dismissed because "there is no reasonable expectation of privacy in rooms in the jail where surveillance cameras are clearly visible." (ECF No. 24, PageID.118).

The Fourth Amendment guarantees that all people shall be "secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."

---

favor in this case would not necessarily imply the invalidity of his criminal conviction.  *Heck*, 512 U.S. at 487.

U.S. Const., Amend. IV.  "[A] Fourth Amendment search occurs when the government violates a subjective expectation of privacy that society recognizes as reasonable." *Kyllo v. United States*, 533 U.S. 27, 33 (2001).  This two-part test, first articulated in Justice Harlan's concurring opinion in *Katz v. United States*, 389 U.S. 347, 361 (1967) (Harlan, J., concurring) requires a showing that (1) the individual has a subjective expectation of privacy, and (2) the expectation is one that society recognizes as reasonable.  *See Long v. City of Saginaw*, No. 12-cv-15586, 2014 WL 1845811, at *4 (E.D. Mich. May 8, 2014).

While there is a diminished expectation of privacy in a prison or jail, the Fourth Amendment is not completely suspended in those settings, because "the Fourth Amendment protects people, not places."  *Katz*, 389 U.S. at 352.  In *Long*, the plaintiff, an attorney, claimed that members of the Saginaw County Sheriff's Office violated his Fourth Amendment rights by videotaping his conversations with his client.  Because the claim involved attorney-client communications, the Court found it not dispositive that the conversations occurred in the jail:

> Because "the Fourth Amendment protects people, not places," *Katz*, 389 U.S. at 352,  it is not dispositive that Long's conversation took place within a jail.  "[I]n the prison setting, attorney-client communications generally are distinguished from other kinds of communications and exempted from routine monitoring." *Lonegan v. Hasty,* 436  F.Supp.2d  419,  432  (E.D.N.Y.2006); *see also Evans  v. Inmate Calling Solutions,* 2011 WL 7470336, at *15 (D.Nev. July 29, 2011) ("[I]t is objectively reasonable for confidential communication between an inmate and his attorney to remain private."); *Sowards v. City of Milpitas,* 2005 WL 1566540, at *3 (N.D.Cal. July 5, 2005)

(holding that the police violated the Fourth Amendment by recording an attorney-client conversation in an interrogation room).

*Long*, at *4.  The fact that Long brought claims in his capacity as an attorney, not an inmate-client is of no import given that Butler, like his attorney, had a reasonable expectation of privacy.  Stressing the importance of attorney-client communications, the district court in *Long* added, "Indeed, the need for confidential attorney-client communications and the informed legal assistance they facilitate is no less pressing in a police station or jailhouse setting than in other circumstances."  *Id*. (citing *Lanza v. State of New York,* 370 U.S. 139, 143–44 (1962)).  The district court found that the fact that Long's communications with his client were privileged created at least a question of fact as to whether he had a subjective expectation of privacy:

> In light of the caselaw authority, although Long's communications with his client occurred within the Saginaw County Jail, he may have had a subjective expectation of privacy in  those  communications.    The conversation concerned legal matters for which Long had been hired by his client, and therefore the attorney-client privilege attached to those communications.

*Id.* at *5 (footnote omitted and quoting *In re State Police Litigation,* 888 F. Supp. 1235, 1256 (D. Conn.1995) ("[W]here no consent exists, and where conversations consist of privileged communications between clients and their attorneys, an expectation of privacy is reasonable.").

Denying summary judgment to the defendants, the district court in *Long* also found that there was at least a question of fact as to whether the expectation of privacy was reasonable:

> Taking the facts in a light favorable to Long, the non-movant, the Court concludes that there is a genuine issue of fact regarding whether Long had a reasonable expectation of privacy in the small classroom while meeting with his client. No signs warned of the possibility of surveillance, neither attorneys nor their clients were told of the possibility of surveillance, and there were no indications that the camera in the small classroom was on or recording the events. Given the lack of warning about the possibility of surveillance and the highly confidential nature of attorney-client communications, there is an issue of fact regarding whether Long had a reasonable expectation of privacy in his communication with Ms. Messing in the small classroom at the Saginaw County Jail.

*Id.* at *6 (footnote omitted).

Defendants seek dismissal under Rule 12(b)(6), not summary judgment under Rule 56. Following discovery, there may or may not be questions of fact as to whether the surveillance cameras were visible, whether Butler or his attorney knew or were told that the cameras were recording their conversations, or whether there were written warnings of that possibility.[6] Likewise, there may be questions as to whether the jail protocols on recording were permissible as "reasonably

---

[6] Defendants state that the jail's surveillance cameras "were in plain sight." (ECF No. 24, PageID.118). That statement should not be considered in a motion to dismiss under Rule 12(b)(6). At this pre-discovery point there is no evidence to support that assertion, or to establish that cameras were visible in the area where attorney-client visits took place.

related to legitimate penological interests." *Turner*, 482 U.S. at 89.  However, at this stage of the litigation, Butler has raised a plausible Fourth Amendment claim. Defendants' categorical assertion that "there is no reasonable expectation of privacy in rooms in the jail where surveillance cameras are clearly visible" (ECF No. 24, PageID.118) is, as a general matter, incorrect under *Long* and the cases cited therein.  Again, while Defendants may raise or succeed on this argument on summary judgment, it does not support dismissal under Rule 12(b)(6).

D.     The Fifth and Fourteenth Amendments

Butler also claims a violation of due process under the Fifth and Fourteenth Amendments, based on the intrusion into the attorney-client privileged communications.  However, that intrusion is specifically claimed and analyzed under the Sixth and Fourth Amendments, as discussed above.  "Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.' " *Albright v. Oliver,* 510 U.S. 266, 273 (1994) (quoting *Graham v. Connor,* 490 U.S. 386, 395 (1989)).  Butler's due process claims should therefore be dismissed.

E.     Equal Protection

16

"To state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff 'disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.' " *Ctr. for Bio–Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) (quoting *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby, Mich.*, 470 F.3d 286, 299 (6th Cir. 2006), *overruled on other grounds by Engquist v. Or. Dep't of Agric.,* 553 U.S. 591 (2008), *as recognized in Davis v. Prison Health Servs.,* 679 F.3d 433, 442 n. 3 (6th Cir.2012)).

Butler has not pled that he was treated disparately from other inmates or individuals or that he is a member of a protected class.  Thus, he has failed to statue a viable equal protection claim.

## F.   The State Law Claims

Butler alleges that in addition to the federal claims, his rights were violated under the Fourth, Fifth, Sixth, and Fourteenth Amendments under the Michigan Constitution.  (ECF No. 1, PageID.6).  He also alleges that Defendants' actions violated M.C.L. 780.991(2)(a) which "guarantee[s] the right of indigent defendants to the assistance of counsel as provided under amendment VI of the Constitution of the United States and section 20 of article I of the state constitution of 1963" and guarantees further that "(a) Defense counsel is provided sufficient time and a space

where attorney-client confidentiality is safeguarded for meetings with defense counsel's client."  (ECF No. 1, PageID.4).[7]

Defendants concede that the Court has discretion to exercise supplemental jurisdiction over state law claims but argue that the Court should decline to do so because of the dismissal of the federal claims under § 1983.  Defendants offer no additional argument in support of their request.

However, under Michigan law, Butler may not bring state constitutional claims against these defendants.  In *Jones v. Powell*, 462 Mich. 329, 612 N.W.2d 423 (2000), the Michigan Supreme Court held that there is no independent damages remedy against individual government employees for violations of the Michigan State Constitution.  *Id*., 462 Mich. at 337.  Citing *Smith v. Dep't. of Pub. Health*, 428 Mich. 540 (1987), the Michigan Supreme Court held that held that while the *state* might be subject to state constitutional claims in a narrow class of cases, other governmental entities within the state, such as municipalities (or counties), as well as individuals, are not.  *Jones*, 462 Mich. at 335 (finding "no support for inferring a damage remedy for a violation of the Michigan Constitution in an action against a municipality or an individual government employee.").  The

---

[7] While Butler claims that the alleged violation of M.C.L. 780.991 is also an "equal protection" violation, as discussed above, he has not pled that he was treated disparately from other inmates or individuals or that he is a member of a protected class.

Court's reasoning was that while Eleventh Amendment immunity would insulate a state against a claim for damages in a federal § 1983 case, that immunity would not apply to an inferior governmental entity within the state.  Therefore, a plaintiff would have a remedy against a county or municipality under § 1983.  *Id*. at 336-337.[8]  Under *Jones*, Butler's remedy lies under § 1983 for the alleged federal constitutional violations under the Fourth and Sixth amendments, not under the analogous provisions of the Michigan constitution.  *See Reed v. City of Detroit*, No. CV 18-10427, 2019 WL 4574385, at *8–9 (E.D. Mich. Sept. 20, 2019) (Parker, J.) ("the Michigan Supreme Court has held that there is no damages remedy against an individual or municipality under the Michigan Constitution because other remedies are available against them, specifically a § 1983 claim.").  Therefore, Butler's Michigan constitutional claims should be dismissed.

Finally, to the extent that Butler asserts a claim under M.C.L. § 750.539, (ECF No. 1, PageID.4), it should also be dismissed because this is a criminal statute.  Such a claim is not cognizable, since private citizens cannot enforce criminal statutes and do not have a "judicially cognizable interest in the

---

[8] "Generally, 'subdivisions of the state, such as counties and municipalities, are not protected by the Eleventh Amendment.' "  *Fox v. Cnty. of Saginaw*, No. 19-CV-11887, 2021 WL 120855, at *6 (E.D. Mich. Jan. 13, 2021), *aff'd sub nom. Fox v. Saginaw Cnty., Michigan by Bd. of Commissioners*, No. 21-1108, 2022 WL 523023 (6th Cir. Feb. 22, 2022) (quoting *Lawson v. Shelby Cty., TN*, 211 F.3d 331, 335 (6th Cir. 2000)).

prosecution or nonprosecution of another." *Linda R.S. v. Richard D.,* 410 U.S. 614, 619 (1972).[9]

## VI. Conclusion

For the foregoing reasons, the undersigned recommends that the motion be GRANTED IN PART AND DENIED IN PART, as follows:

The motion should be DENIED as to Butler's Sixth Amendment and Fourth Amendment claims brought under 42 U.S.C. § 1983;

The motion should be GRANTED as to Butler's claims for injunctive relief;

The motion should be GRANTED as to Butler's claims under Fourteenth and Fifth Amendment due process;

The motion should be GRANTED as to Butler's claim under Fourteenth Amendment equal protection; and

The motion should be GRANTED as to Butler's claims under the Michigan constitution and his state law statutory claim under M.C.L. § 750.539.

In other words, only Butler's § 1983 claims based on violations of the Sixth and Fourth Amendments should continue.


Dated: May 11, 2022                              s/Kimberly G. Altman
Detroit, Michigan                                KIMBERLY G. ALTMAN
                                                 United States Magistrate Judge

---

[9] In addition, Butler refers to subsections (c), (d), (e) and (i) of § 750.539. However, that statute does not have subsections. He also includes a citation to M.C.L § 760.991(a)(2), a statute that does not exist.

## NOTICE TO PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation.  Any objections must be filed within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health & Hum. Servs.*, 932 F.2d 505, 508 (6th Cir. 1991).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Hum. Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Under Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to

Objection No. 2," etc.  If the Court determines that any objections are without

merit, it may rule without awaiting the response.

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on May 11, 2022.

s/Carolyn Ciesla
CAROLYN CIESLA

Case Manager