UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ANTHONY MICHAEL BUTLER,

     Plaintiff,

v.

ROBERT PICKELL, CHRISTOPHER
SWANSON, MICHAEL TOCARCHICK,
JASON GOULD, and COUNTY OF
GENESEE,

     Defendants.

_____/

Case No. 1:21-cv-10817
District Judge Thomas L. Ludington
Magistrate Judge Kimberly G. Altman

## REPORT AND RECOMMENDATION TO GRANT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF No. 35)

### I.     Introduction

This is a prisoner civil rights case. On March 31, 2021, Anthony Michael

Butler (Butler) filed a *pro se* civil complaint under 42 U.S.C. § 1983. He named as

defendants the current and former sheriffs of Genesee County, jail administrators,

the Genesee County Sheriff's Department, and the County of Genesee.[1] (ECF No.

1). In broad terms, Butler alleges that defendants installed an audio and video

surveillance system in the jail which recorded his confidential attorney-client

---

[1] Dylan Earick was also a named plaintiff but was dismissed without prejudice.
Likewise, the Genesee County Sheriff's Department was dismissed as a defendant.
*See* ECF No. 8.

1

meetings which violated his constitutional rights.  Under 28 U.S.C. § 636(b)(1) all pretrial matters have been referred to the undersigned.  (ECF No. 15).

Before the Court is defendants' motion for summary judgment.  (ECF No. 35).  For the reasons that follow, the undersigned RECOMMENDS that the motion be GRANTED.

## II.      Background

### A.      Relevant Procedural History

On August 12, 2021, the Court, after screening the complaint as required by the Prison Litigation Reform Act (PLRA), dismissed Butler's co- plaintiff Dylan Earick without prejudice and dismissed defendant Genesee County Sheriff's Department with prejudice as to all claims.  (ECF No. 8, PageID.47).  In its order of partial dismissal, the Court summarized the facts contained in the complaint as follows:

> Plaintiffs allege Defendants are responsible for the installation of a new surveillance system which began recording in October 2017.  ECF No. 1 at PageID.3.  Cameras and microphones "were installed in areas where Attorney-client consultations regularly occur."  *Id*.  Plaintiffs assert that attorney-client meetings were recorded until at least February 2021, and that the recordings provided the prosecution access to "privileged consultations . . . [including] facts of the case and sensitive information such as trial strategy."  *Id*.

> Plaintiffs further allege that because the jail is a public facility, the recordings are subject to release under the Freedom of Information Act.  *Id*.  In support, Plaintiffs contend that a private citizen was able to obtain such records.  *Id*. at PageID.7.  They allege the existence of evidence associated with two attorney-client meetings in October 2020.

2

*Id*. at PageID.5.

Plaintiffs seek $12,500,000 for each violation of their constitutional rights, totaling $100 million. ECF No. 1 at PageID.6. They also request injunctive relief against the Genesee County Jail, to "prevent[] further intrusion upon Attorney-client privileged communications." *Id*. Finally, Plaintiffs seek the dismissal of any charges against them for which they would have sought legal counsel between May 2019 and February 2021.

(*Id*., PageID.41).

Butler asserts that as a result of the alleged intrusion into the attorney-client privilege, he "suffered legal injuries" under the Fourth, Fifth, Sixth, and Fourteenth Amendments, and the analogous provisions of the Michigan Constitution. (ECF No. 1, PageID.6).

On February 16, 2022, defendants filed a motion to dismiss. (ECF No. 24). In a May 11, 2022 Report and Recommendation (R&R), the undersigned recommended that their motion be granted in part and denied in part. (ECF No. 32). Specifically, the undersigned recommended that Butler's claims under the Fifth and Fourteenth Amendments; the Michigan Constitution; state law; and for injunctive relief be dismissed. The undersigned also recommended that Butler's Fourth and Sixth Amendment claims under § 1983 should survive dismissal, as he stated plausible claims for relief. (*Id*.). These recommendations were adopted by the district judge on July 20, 2022. (ECF No. 33).

Defendants now move for summary judgment on Butler's Fourth and Sixth

3

Amendment claims.  (ECF No. 35).  They contend that there is no genuine issue of material fact on the following issues: that (1) Butler had no expectation of privacy in the areas of the jail that were monitored and recorded, and (2) the recorded conversations between Butler and his attorney were not private.  (*Id*.).  The motion is fully briefed.  (ECF Nos. 37, 38).

B.      Record Evidence

1.      Affidavit of Jason Gould

In their statement of facts, defendants rely in part on an affidavit from defendant Jason Gould (Gould), Jail Administrator for the Genesee County Jail (the Jail) from September 30, 2014 to December 23, 2022.  (ECF No. 35-2, PageID.245).  Gould states that he is familiar with the physical layout of the Jail, including the locations of the attorney/client conference rooms; generally familiar with the Jail's surveillance cameras and the process for monitoring, recording, and storing their information; "very familiar" with the Jail's procedure for housing inmates; and aware of the physical modifications made to the Jail while he was an administrator.  (*Id*).

Gould's affidavit further explains that newly arriving inmates are placed in "general population" housing with other inmates until they are classified.  (*Id*., PageID.246).  Classification determines where the inmate will be ultimately housed within the Jail, taking into account factors such as gender, health, and

4

vulnerability to other inmates.  Inmates may be vulnerable to other inmates if they are, for example, members of rival gangs.  Inmates are also not housed on the same floor as other inmates who are co-defendants in a criminal prosecution.  Inmates with medical problems or special dietary needs are housed closer to the medical department.  Once an inmate is classified and assigned to a floor, he or she is not allowed on other floors without being reclassified, in light of the penological interests noted above.  (*Id*.).

Gould further states that there are attorney/client conference rooms on floors three, four, and five, which are monitored by video cameras without audio solely for security reasons.  (*Id*., PageID.247).  These rooms also contain microphones for the purposes of  arraignment, taking of pleas, and other remote court appearances, but they are only active during court appearances, and to Gould's knowledge the Jail has never monitored the audio in these rooms.  (*Id*., PageID.247-248).

Gould goes on to explain that the attorney/client rooms are only accessible through "activity rooms" on each floor.  (*Id*., PageID.248).  Attorneys also meet with their clients at times in an area referred to as "the bubble," which is outside the activity rooms.  The bubble rooms are manned by a deputy at each room and contain two tables with chairs, each.  Both tables are within hearing distance of the deputy according to Gould, and are monitored by surveillance cameras that record video and audio at all times.  (*Id*.).

Defendants have attached photographs of the bubble, depicting the short distance between the table and chairs at which attorneys and their clients commonly sit, and the deputy sitting at the desk.



(ECF No. 35-6).

Gould attests that there are signs "prominently posted" at the public entrances of the Jail that state: "Security Reminder: THIS FACILITY MAY BE MONITORED WITH BOTH AUDIO AND VIDEO.  THERE IS NO AUDIO MONITORING IN ATTORNEY-CLIENT SPECIFIED PLACES."  (ECF No. 35-2, PageID.249).  Defendants have also provided photographs of these signs and

their locations.  (ECF Nos. 35-8, 35-9, 35-10, 35-11).

From August 2019 through October 2020, the elevators in the Jail were replaced, and during construction there were tools stored in the Jail overnight by construction workers.  (ECF No. 35-2, PageID.250).  These tools were stored in the activity rooms, which can be locked, thereby preventing inmates from accessing the tools.  This prevented attorneys and their clients from using the attorney/client conference rooms, which are only accessible through the activity rooms.  According to Gould, attorneys chose to meet with their clients in the bubble rooms during construction.  (*Id*).  Gould also states that to his knowledge, the Jail has never had an attorney refuse to meet in the bubble and request a confidential place to meet.  (*Id*., PageID.249).  If an attorney had requested a confidential meeting place, he says they would have been accommodated.  (*Id*., PageID.248-249).

As for the recordings from the bubble, Gould says that while the cameras there recorded video and audio, the audio is unintelligible due to the distance from the cameras to the place of conversation.  (*Id*., PageID.250-251).  The audio and video from the cameras are stored on hard drives that automatically write over the oldest data when they are full and there is new data to record.  (*Id*., PageID.251).  The overwritten data is lost unless a backup was made, which is not done unless there is a specific request for a portion of the recording, such as a complaint or

7

Freedom of Information Act (FOIA) request.  (*Id*.).

Gould further states that he has never reviewed audio of conferences between inmates and their attorneys, and that "[i]f there were recordings of conversations between [Butler] and his attorney . . . that were not copied, they will eventually be written over if they have not already been written over."  (*Id*., PageID.252).

## 2.    Butler's Deposition Testimony

Butler was deposed by defense counsel on January 26, 2023.  (ECF No. 35-3).  Butler testified that while in jail, he met with his attorney in four different areas: in the booking area when he was first booked; in the bubble; the activity room; and the attorney/client conference room.  (*Id*., PageID.260-261).  He stated that "everybody passes through" the bubble at the Jail and that there is "always 100 percent of the time a deputy there, if not two."  (*Id*., PageID.262).  He complained that he was not allowed to use the attorney/client rooms during construction, and that even if one was available on another floor, he was not allowed to go to another floor to use an available attorney/client room.  (*Id*., PageID.262-267).

Butler further testified that he was unsure if the particular camera in his floor's bubble had audio, but that he was aware that similar cameras have the ability to be connected to wireless microphones.  (*Id*., PageID.269).  He stated that he was forced to meet with his attorney in the bubble, though they "argued tooth

8

and nail" to meet elsewhere.  (*Id.*, PageID.273).  Thus, he complained that he was

had no choice but to meet with his attorney regarding confidential matters in an

area that was both recorded and monitored closely by a deputy.  (*Id.*, PageID.273-

274).  He also complained that those recordings were made available to the

prosecutor's office, as well as a member of the general public, without his consent.

(*Id.*).  Additionally, he worried that the cameras in the attorney/client rooms could

also pick up and record audio, but he did not know this to be the case.  (*Id.*,

PageID.275).

### 3.   Video and Audio Evidence

Defendants note that during his deposition, Butler referenced three video

files, with audio, that he had obtained via FOIA request and attached to the

complaint.  The files do not appear on ECF as docket entries or exhibits, but were

supplied to defendants (and the undersigned) upon request by the Clerk's office.

They are labeled, in chronological order, "FOIA Butler 9-28," "FOIA Butler 10-

22," and "5th Floor Activities_2020_Dec_21_09_00_03."  Defendants summarize

the videos as follows:

> The first video appears to be taken on September 28, 2020.  It shows
> the bubble.  Almost immediately an attorney walks in, known by
> defense counsel to be local criminal defense attorney John Tosto.
> Plaintiff testified that Tosto was his attorney at that time.  (Exhibit 2, at
> p26 Line 15-18).  At approximately [8]:33:08 on the counter, an inmate
> enters, believed to be plaintiff, and sits down with Tosto at the table
> shown in Exhibit 6.  A deputy is present within feet of them.  There is
> audio, but it is too distorted for the undersigned [defense counsel] to

understand.  (Complaint, ECF No. 1, exhibit 1, PageID unknown).

. . .

The [second] video is a split screen.  It shows the bubble on the bottom and the activities room on the top.  At about [12:30:03] an inmate enters the bubble.  It's unclear whether it is plaintiff.  He sits down at another table from where the two previous encounters occurred.  He talks with an individual believed to be an attorney but who is not well seen.  A deputy is present at the desk the entire time.  There is no audio.  There appears to be no significance to the video of the activities room, which also contains no [audio].  (Complaint, ECF No. 1, exhibit 3, PageID unknown).

. . .

The [third] video appears to be taken on [December] 21, 2020.  Once again, it shows the bubble.  At about [8]:23:51 an attorney arrives.  At about [8]:26:01 an inmate arrives.  It does not appear to defense counsel to be plaintiff.  They sit down at the same table.  A deputy is present.  There's another inmate present.  At one point, around [8]:38:22, there are approximately 8 people in the room including several deputies and inmates doing the laundry.  Once again, the sound is to[o] distorted for the undersigned [defense counsel] to understand anything that was said.  (Complaint, ECF No. 1, exhibit 2, PageID unknown).

(ECF No. 35, PageID.225-226).  The undersigned has reviewed the videos and concludes that their content is accurately described by Defendants.  Furthermore, the sound quality from these videos is not material to the undersigned's opinion.

### 4.     Butler's Affidavit in Response

Butler filed a two-page response to defendants' motion for summary judgment, contending that he had an expectation of privacy that was violated; that his attorney client privilege was infringed upon; and that there are genuine issues

of material fact remaining.  (ECF No. 37, PageID.333-334).  Butler also attached a

two-page affidavit to his response.  (ECF No. 37-1, PageID.335-336).  According

to the affidavit, Butler and his counsel made numerous requests for a private area

during the period the attorney/client rooms were unavailable, but were denied.

(*Id*.).[2]  This included being denied the right to access an attorney/client room that

was available on another floor.  Butler also attests that the video files he obtained

prove that recordings were saved beyond defendants' stated timeline; that he

vehemently objected to meeting with his attorney in the bubble area; and that he

was told the cameras in the bubble did not record audio, thereby creating an

expectation of privacy.  (*Id*.).

### III.    Summary Judgment Standard

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary

judgment if the movant shows that there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(a).  A fact is material if it might affect the outcome of the case under governing

law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The court "views

the evidence, all facts, and any inferences that may be drawn from the facts in the

light most favorable to the nonmoving party."  *Pure Tech Sys., Inc. v. Mt. Hawley

Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004).

---

[2] Butler has not submitted an affidavit from his attorney to this effect.

"The moving party has the initial burden of proving that no genuine issue of material fact exists. . . ." *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotation marks omitted); cf. Fed. R. Civ. P. 56(e)(2) (providing that if a party "fails to properly address another party's assertion of fact," the court may "consider the fact undisputed for purposes of the motion"). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.' " *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The fact that Butler is *pro se* does not reduce his obligations under Rule 56. Rather, "liberal treatment of pro se pleadings does not require lenient treatment of substantive law." *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 344 (6th Cir. 2006). Additionally, "once a case has progressed to the summary judgment stage, as is true here, the liberal pleading standards under the Federal Rules are inapplicable." *J.H. v. Williamson Cnty.*, 951 F.3d 709, 722 (6th Cir. 2020) (quoting *Tucker v. Union of Needletrades, Indus., & Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005)) (cleaned up).

IV.    Analysis

A.    Sixth Amendment Claim – Meeting with Attorney in the Bubble

1.    Attorney-Client Privilege

12

Butler's Sixth Amendment claim arises from allegations that from May 2019 until at least February 2021, the video surveillance system in the Jail recorded numerous privileged consultations he had with his attorney in the bubble area. (ECF No. 1, PageID.5).  He alleges that there were both audio and visual recordings.  (*Id*., PageID.3).  As clarified by the evidence now before the Court, Butler's claim centers around the unavailability of the attorney/client rooms during the work on the Jail elevators.  Butler believes that his Sixth Amendment rights were violated when he was not provided a private area to consult with his attorney, given that the bubble contained cameras recording audio and video as well as a live deputy within earshot of the common meeting area.

"Attorney-client communications have a special status in our legal system." *Lonegan v. Hasty,* 436 F.Supp.2d 419, 434 (E.D.N.Y. 2006); *Swidler & Berlin v. United States,* 524 U.S. 399, 403 (1998).  "The oldest privilege for confidential communications recognized by law, the attorney-client privilege is intended to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observations of law and the administration of justice."  *Id*.  Moreover, prejudice can be established by the violation itself: "It is well-settled that a chilling effect on one's constitutional rights constitutes a present injury in fact."  *Muhammad v. Pitcher*, 35 F.3d 1081, 1084 (6th Cir. 1994); *see also G & V Lounge v. Michigan Liquor Control Comm'n,* 23

F.3d 1071, 1076 (6th Cir. 1994).

Defendants argue that because Butler knew that his conversations with his attorney were taking place within earshot of a deputy, there was no attorney-client privilege to violate. In other words, Butler's Sixth Amendment rights were not violated. *See People v. Compeau*, 244 Mich. App. 595, 597 (2001) (holding that attorney-client privilege does not apply unless there is an "element of confidentiality"). In *Compeau*, a criminal defendant spoke to his attorney in the courtroom while "the uniformed bailiff was in his usual position in the courtroom and his presence was obvious to all persons in the room." *Id*. The defendant did not take measures to keep his remarks confidential, and thus his communication— which was overheard by the bailiff and the subject of the bailiff's later testimony— was not privileged. *Id*.

Similarly, in *People v. Chapman*, No. 345090, 2019 WL 6340929, at *2 (Mich. Ct. App. Nov. 26, 2019) (unpublished),[3] a criminal defendant spoke to his attorney on the phone in a police station booking room in the presence of a police officer. This conversation was recorded, and the recording was later played for the jury at the defendant's trial. *Id*. The court found that the defendant's conversation was not privileged because he "took no precautions to ensure that his

---

[3] Under Mich. Ct. R. 7.215(C)(1) explains that "[a]n unpublished opinion is not precedentially binding under the rule of stare decisis."

14

communication was confidential." *Id*. at *3.  "Despite knowing of [the officer's] presence, [the] defendant spoke in a manner that allowed his conversation to be overheard."  *Id*.

As in *Compeau* and *Chapman*, Butler's communications with his attorney in the bubble were not privileged, given the evidence now before the Court. Although Butler contends that he had a reasonable belief that the cameras in the bubble did not record audio, he cannot avoid that fact that the deputy's clear presence, which he testified knowledge of at deposition, renders the communications in the bubble nonprivileged.  However, as explained previously,[4] the mere presence of surveillance in the only available area for Butler to meet with his attorney can also create a chilling effect on the exercise of Butler's Sixth Amendment right to counsel.  *See Grubbs v. O'Neill*, 744 F. App'x 20, 23 (2d Cir. 2018) (citing *Wolff v. McDonnell*, 418 U.S. 539, 577 (1974)).

## 2.    Chilling Effect

In *Grubbs*, a class of inmates sued various New York City defendants, alleging "a litany of unconstitutional practices in the New York City jails."  744 F. App'x at 21.  Relevant to this matter, "the court [in a prior ruling] determined that

---

[4] In this Court's previous opinion permitting Butler's Sixth Amendment claim to survive initial screening under the PLRA, (ECF No. 8), the district judge noted that "[t]he Second Circuit vacated a district court order where the lower court 'failed to consider any chilling effect' that jail surveillance had on the plaintiffs' right to counsel." (quoting *Grubbs v. O'Neill*, 744 F. App'x 20, 23 (2nd Cir. 2018).

the City had violated pre-arraignment detainees' right to counsel by failing to provide a private space for attorney–client consultation." *Id*. The parties reached a settlement agreement whereby the City would install an interview booth for private consultation between pre-arraignment detainees and their counsel. *Id*. Later, the City constructed a new courthouse, and while it contained booths for attorney-client consultation, the City installed surveillance cameras in the booths for security purposes. *Id*. The cameras did not capture images of the attorney's side of the booth, had no audio, and utilized "masking technology" to obscure parts of the images captured, preventing the City from viewing the detainees while they met with their attorneys. *Id*. at 21-22.

The *Grubbs* plaintiffs objected to the presence of cameras in the attorney-client booths, but the district court found that "a detainee's 'subjective impression or belief' that her conversation was being recorded and monitored did not constitute a cognizable burden on the Sixth Amendment." *Id*. at 23 (quoting *Grubbs v. Safir*, No. 92 CIV. 2132 (GBD), 2018 WL 1225262, at *8 (S.D.N.Y. Feb. 26, 2018)). The Second Circuit reversed and remanded the case, finding that "[t]he district court did not appropriately consider the chilling effect that the cameras' presence in the attorney-client booths could have on pre-arraignment detainees' willingness to communicate candidly with their attorneys." *Id*.

There is a genuine issue as to the availability of private areas for confidential

16

communication.  Butler has testified at deposition, (ECF No. 35-3, PageID.273), and attested, (ECF No. 37-1, PageID.335), that he objected to meeting in the bubble with his attorney and was denied recourse.  Gould has said that to his knowledge, the Jail has never had an *attorney* refuse to meet with a client in the bubble or request a confidential place to meet.  (ECF No. 35-2, PageID.249).  He further stated that if an attorney were to request a private meeting place, the Jail would have accommodated the attorney, for instance, by providing the room in the booking area where there is no audio recording.  (*Id*., PageID.248-249).  Whether this issue is material depends on a balancing test, weighing the Jail's legitimate interests in restricting access to the attorney-client rooms against the availability and impact of any accommodation the Jail could have made for Butler.

In other words, in order for defendants to obtain summary judgment on Butler's Sixth Amendment claim, they must establish that restricting Butler and his attorney's access to the attorney-client rooms and requiring meetings in the bubble was reasonably related to a legitimate penological interest as a matter of law.  That issue is addressed below.

### 3.    Balancing Test

"The Supreme Court has instructed that 'when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests.' "  *Muhammad v. Pitcher*, 35 F.3d 1081, 1084 (6th

17

Cir. 1994) (quoting *Turner v. Safley,* 482 U.S. 78, 89 (1987)). There are four factors to consider in determining the reasonableness of a challenged prison regulation.

> First, there must be a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it. If not, the regulation is unconstitutional, and the other factors do not matter. Unlike the first factor, the remaining factors are considerations that must be balanced together: (2) whether there are alternative means of exercising the right that remain open to prison inmates; (3) the impact that accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally; and (4) whether there are ready alternatives available that fully accommodate the prisoner's rights at *de minimis* cost to valid penological interests.

*Id*. (internal citations and quotation marks omitted).

Defendants argue that there is a clear penological interest in having a camera with audio to monitor the bubble. The safety of the deputy in the bubble must be monitored in an area that is accessible to inmates, and the deputy must be present in order to guard the elevators (which provide access to the outside), the activity room full of inmates, and the housing unit where cells are located. (ECF No. 35, PageID.234). An attack on the deputy from multiple inmates could result in the inmates becoming armed and gaining access to all of the areas accessible via the bubble. (*Id*.). Further, the locking of activity rooms was necessary to prevent the inmates from gaining access to the construction tools stored onsite, which could easily be used as weapons. (*Id*.).

18

Butler contends that he and his counsel made numerous requests for a private meeting area and to be moved to a different floor where an attorney/client room was available, but were denied.  (ECF No. 37-1, PageID.335).  However, he provides no analysis of whether an alternative accommodation to his rights was readily available at a *de minimis* cost to penological interests, or what impact that accommodation might have on guards or other inmates.  Other than Butler's deposition testimony, he offers no evidence that his attorney or Butler himself requested a private conference room and were denied.  On the other hand, Gould says that there are valid safety and security reasons for keeping inmates off of floors they are not assigned to, (ECF No. 35-2, PageID.246), and that while booking rooms may have been available for attorney-client meetings at times, he never received a request from an attorney to meet in a confidential area, (*Id*., PageID.249).

Based on the above, the undersigned agrees with defendants that this was an "unfortunate situation," (ECF No. 35, PageID.236), and were it permanent, the *Turner* factors might weigh in favor of Butler.  However, as a temporary, intermittent restriction based on jailhouse construction—delayed for about a year due to the COVID-19 pandemic—the undersigned concludes that these measures were put in place based on a valid penological interest that was not outweighed by any chilling effect of requiring attorneys to meet with inmates in the bubble during

19

this time.  Reasonable minds could not find otherwise.  Thus, the undersigned recommends that judgment be granted for defendants on Butler's Sixth Amendment claims.

  B.   Fourth Amendment – Recording/Deputy Present in the Bubble

Butler claims that the recording and dissemination of his meeting with his attorney constituted and unlawful search and seizure, in violation of the Fourth Amendment.

The Fourth Amendment guarantees that all people shall be "secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const., Amend. IV.  "[A] Fourth Amendment search occurs when the government violates a subjective expectation of privacy that society recognizes as reasonable." *Kyllo v. United States*, 533 U.S. 27, 33 (2001).  This two-part test, first articulated in Justice Harlan's concurring opinion in *Katz v. United States*, 389 U.S. 347, 361 (1967) (Harlan, J., concurring), requires a showing that (1) the individual has a subjective expectation of privacy, and (2) the expectation is one that society recognizes as reasonable.  *See Long v. City of Saginaw*, No. 12-cv-15586, 2014 WL 1845811, at *4 (E.D. Mich. May 8, 2014).

While there is a diminished expectation of privacy in a prison or jail, the Fourth Amendment is not completely suspended in those settings, because "the Fourth Amendment protects people, not places."  *Katz*, 389 U.S. at 352.  In *Long*,

the plaintiff, an attorney, claimed that members of the Saginaw County Sheriff's Office violated his Fourth Amendment rights by videotaping his conversations with his client at the Saginaw County Jail.  The district court noted the fact the conversations occurred in the jail was not dispositive of whether the attorney-client privilege was violated, explaining:

> Because "the Fourth Amendment protects people, not places," *Katz,* 389 U.S. at 352, it is not dispositive that [the plaintiff's] conversation took place within a jail. "[I]n the prison setting, attorney-client communications generally are distinguished from other kinds of communications and exempted from routine monitoring." *Lonegan v. Hasty,* 436 F.Supp.2d 419, 432 (E.D.N.Y. 2006); *see also Evans v. Inmate Calling Solutions,* 2011 WL 7470336, at *15 (D. Nev. July 29, 2011) ("[I]t is objectively reasonable for confidential communication between an inmate and his attorney to remain private."); *Sowards v. City of Milpitas,* 2005 WL 1566540, at *3 (N.D. Cal. July 5, 2005) (holding that the police violated the Fourth Amendment by recording an attorney-client conversation in an interrogation room).

*Long*, at *4.

The district court went on to find that the attorney-plaintiff's claim—that recordings of his communications with his client in the Saginaw County Jail—violated the Fourth Amendment survived summary judgment:

> Taking the facts in a light favorable to [the plaintiff], the non-movant, the Court concludes that there is a genuine issue of fact regarding whether [the plaintiff] had a reasonable expectation of privacy in the small classroom while meeting with his client.  No signs warned of the possibility of surveillance, neither attorneys nor their clients were told of the possibility of surveillance, and there were no indications that the camera in the small classroom was on or recording the events.  Given the lack of warning about the possibility of surveillance and the highly confidential nature of attorney-client communications, there is an issue

21

of fact regarding whether [the plaintiff] had a reasonable expectation of
privacy in his communication with [his client] in the small classroom
at the Saginaw County Jail.

*Long*, at \*6 (internal footnote omitted).

In keeping with *Long* and in recommending denial of defendants' motion to

dismiss Butler's Fourth Amendment claim, the undersigned wrote: "Following

discovery, there may or may not be questions of fact as to whether the surveillance

cameras were visible, whether Butler or his attorney knew or were told that the

cameras were recording their conversations, or whether there were written

warnings of that possibility."  (ECF No. 32, PageID.192).  As the undersigned

noted, defendants argued that the surveillance cameras in the bubble were "in plain

sight," but that this information could not be considered at the motion to dismiss

stage, where Butler's allegations are taken to be true.  (*Id*.).

Now, defendants have moved for summary judgment and submitted

evidence as to the conditions at the Jail which distinguishes this case from the

Saginaw County Jail communications in *Long*.  Here, defendants have evidence

that the cameras in the bubble were in fact in plain sight, as was the deputy in the

bubble within earshot of the meeting table.  (ECF Nos. 35-4, 35-5, 35-6, 35-7).  It

is also clear from Butler's deposition that he was aware of the cameras and the

deputy's presence when he met with his attorney in the bubble.  (ECF No. 35-3).

Further, defendants submitted evidence that there were signs in place at all public

entrances to the Jail stating that the facility was monitored by video and audio, and

that only attorney/client spaces lacked audio monitoring.  (ECF Nos. 35-2, 35-8,

35-9, 35-10, 35-11).

Butler contends via affidavit that the signage did not exist until after January

2022; that he was told he would not be audibly recorded; and that he had no

expectation of audio recording.  (ECF No. 37-1, PageID.335).  However, he

admitted at his deposition that his meetings in the bubble took place within eight

feet of a deputy, (ECF No. 35-3, PageID.267-268), that a deputy was present 100%

of the time, (*Id*., PageID.262), and that any audio picked up by the surveillance

camera would also have been within earshot of the deputy, (*Id*., PageID.270-271).

Butler never met with his attorney in the bubble outside of the presence of a

deputy.  (*Id*., PageID.272-273).

The plaintiff-attorney in *Long* also challenged the communications with his

client in the County Courthouse after he was barred from further visits to the

Saginaw County Jail.  Unlike the communications at the jail, the district court

found that these communications did not survive summary judgment because the

communications were not protected by the Fourth Amendment due to the presence

of a nearby deputy.  *Id*. at *7.  The district court explained that plaintiff had not

"identified any legal authority to support the proposition that he could possess a

reasonable belief that his meeting with [his client] was confidential, despite the

presence of a sheriff's deputy sitting 15 feet away from them." *Id*. "Indeed, the instant claim is distinguishable from cases where courts have found an attorney's expectation of privacy reasonable because, in those cases, the attorneys were unaware that their conversations with clients would be monitored." *Id*. (citing cases).

Butler's claim is analogous to the *Long* plaintiff's claim regarding his communications in the courthouse, which were in the presence of a deputy. Here, the deputy was seated even closer to Butler than the deputy in *Long*. The obvious presence of the deputy in the bubble, which Butler acknowledges, is fatal to the claim that Butler had a reasonable expectation of privacy communicating with his attorney in the bubble. Thus, the undersigned recommends that defendants be granted summary judgment on Butler's Fourth Amendment claims.

## V.    Conclusion

For the foregoing reasons, the undersigned recommends that defendants' motion for summary judgment, (ECF No. 35), be GRANTED and the case be DISMISSED.

Dated: May 18, 2023                    s/Kimberly G. Altman
Detroit, Michigan                      KIMBERLY G. ALTMAN
                                       United States Magistrate Judge

## **NOTICE TO PARTIES REGARDING OBJECTIONS**

The parties to this action may object to and seek review of this Report and

Recommendation.  Any objections must be filed within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health & Hum. Servs.*, 932 F.2d 505, 508 (6th Cir. 1991).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Hum. Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Under Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on May 18, 2023.

s/Carolyn Ciesla
CAROLYN CIESLA
Case Manager
